JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Farnaz M. Alemi (SBN 255836)
falemi@jenner.com
Kirsten C. Jackson (SBN 265952)
kjackson@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:   (213) 239-5199

Attorneys for Plaintiffs
WARNER BROS. ENTERTAINMENT
INC., NEW LINE CINEMA LLC, NEW
LINE PRODUCTIONS, INC., METRO-
GOLDWYN-MAYER STUDIOS INC., and
THE SAUL ZAENTZ COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; NEW LINE CINEMA LLC, a Delaware limited liability company; NEW LINE PRODUCTIONS, INC., a California corporation; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; and THE SAUL ZAENTZ COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br>v.<br>THE GLOBAL ASYLUM INC. (aka The Asylum), a California corporation,<br><br>Defendant. | Case No. 2:12-cv-09547-PSG-CW<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: ENTRY OF PRELIMINARY INJUNCTION**<br><br>Date:          To Be Determined<br>Time:          To Be Determined<br>Courtroom:   880 – Roybal Building<br><br>Honorable Philip S. Gutierrez |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  ASYLUM'S DELAY ARGUMENT CANNOT EXCUSE ITS
     WILLFUL INFRINGING CONDUCT ..................................................... 2

     A.  Asylum Acted At Its Peril After Being On Notice Of
         Plaintiffs' Claims ............................................................................. 3

     B.  Asylum Has Failed To Establish That A TRO Would Not
         Be Effective ..................................................................................... 4

III. ASYLUM FAILS TO REBUT PLAINTIFFS' SHOWING OF A
     LIKELIHOOD OF SUCCESS ON THE MERITS ................................. 5

     A.  Asylum Does Not Dispute Plaintiffs' Affirmative
         Showing ............................................................................................ 5

     B.  Asylum's Contrived Defenses Should Be Rejected .......................... 6

         1.  The *Rogers* First Amendment Test Does Not Apply
             Here ......................................................................................... 6

         2.  Asylum's "Genericness" And Fair Use Defenses
             Cannot Protect Its Infringing Conduct ................................ 8

IV.  ASYLUM FAILS TO REBUT PLAINTIFFS' SHOWING ON
     IRREPARABLE HARM, BALANCE OF HARDSHIPS AND
     PUBLIC INTEREST ................................................................................ 11

V.   CONCLUSION .............................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aguayo v. Tomco Carburetor Co.*,
   853 F.2d 744 (9th Cir. 1988) ............................................................................. 3

*Allied Artists Pictures Corp. v. Friedman*,
   68 Cal. App. 3d 127 (1977) ............................................................................... 7

*Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*,
   684 F.2d 1316 (9th Cir. 1982) ........................................................................... 9

*Brantley v. Maxwell-Jolly*,
   656 F. Supp. 2d 1161 (N.D. Cal. 2009) ........................................................... 12

*Concrete Washout Sys., Inc. v. Washout Sys., LLC*,
   2008 WL 5411965 (E.D. Cal. Dec. 24, 2008) ................................................. 12

*Cybermedia, Inc. v. Symantec Corp.*,
   19 F. Supp. 2d 1070 (N.D. Cal. 1998) ......................................................... 3, 5

*Diller v. Barry Driller, Inc.*,
   No. 12-7200, 2012 U.S. Dist. LEXIS 133515 (C.D. Cal. Sept. 10, 2012) ........ 9

*Dita, Inc. v. Mendez*,
   2010 U.S. Dist. LEXIS 135856 (C.D. Cal. Dec. 14, 2010) ............................... 8

*E.S.S. Entm't 2000 v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ........................................................................... 9

*Frisch's Restaurants v. Elby's Big Boy*,
   670 F.2d 642 (6th Cir. 1982) ............................................................................. 3

*Gilder v. PGA Tour, Inc.*,
   936 F.2d 417 (9th Cir. 1991) ............................................................................. 3

*Helene Curtis Indus. v. Church & Dwight Co.*,
   560 F.2d 1325 (7th Cir. 1977) ........................................................................... 4

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ............................................................................. 8

*Mattel, Inc. v. Walking Mountain Prod's*,
    353 F.3d 792 (9th Cir. 2003) .................................................................................. 9

*Miller v. California Pac. Med. Ctr.*,
    991 F.2d 536 (9th Cir. 1993) .................................................................................. 3

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
    590 F. Supp. 2d 1271 (C.D. Cal. 2008) .................................................................. 3

*New Kids on the Block v. News America Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) .................................................................................. 9

*Ocean Garden, Inc. v. Marktrade Co., Inc.*,
    953 F.2d 500 (9th Cir. 1991) .................................................................................. 3

*Polymer Technologies, Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ................................................................................ 3

*Rain Bird Corp. v. Hit Prods. Corp.*,
    2004 U.S. Dist. LEXIS 20790 (C.D. Cal. June 21, 2004) ..................................... 3

*Rebelution LLC v. Perez*,
    732 F. Supp. 2d 883 (N.D. Cal. 2010) .................................................................... 7

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ........................................................................... 6, 7, 8

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
    970 F. Supp. 279 (S.D.N.Y. 1997) ......................................................................... 7

*Steinway & Sons v. Demars & Friends*,
    1981 U.S. Dist. LEXIS 15169 (C.D. Cal. Jan. 28, 1981) ...................................... 3

*Team Gordon, Inc. v. Specialized Bicycle Components, Inc.*,
    2010 U.S. Dist. LEXIS 130738 (C.D. Cal. Nov. 18, 2010) ................................... 4

*Toho Co. v. William Morrow & Co.*,
    33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................................................ 7, 8

*TravisMathew, LLC v. Leisure Soc'y Unltd., LLC*,
    2012 WL 1463548 (C.D. Cal. Apr. 26, 2012) ....................................................... 4

*Tri-Star Pictures, Inc. v. Unger*,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998) ...................................................................... 7

*Twin Peaks Prod'ns v. Publications Int'l*,
  996 F.2d 1366 (2d Cir. 1993) .............................................................................. 8

*Ty, Inc. v. Softbelly's, Inc.*,
  353 F.3d 528 (7th Cir. 2003) .............................................................................. 9

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
  419 F.3d 925 (9th Cir. 2005) .............................................................................. 8

**OTHER AUTHORITIES**

J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition
  § 12:13 (4th ed. 2011) ........................................................................................ 9

## I. INTRODUCTION

Global Asylum Inc.'s Opposition to Plaintiffs' TRO Application invites the Court to ignore the facts – including Asylum's own conduct – and enter a world of make-believe. Asylum would have this Court believe that all along it was simply trying to make a movie about the *Homo Floresiensis* human sub-species discovered by archaeologists, and that it is merely happenstance that its film *Age of the Hobbits* will be released just three days before the nationwide release of Plaintiffs' film *The Hobbit*. The Court should reject this artifice.

Asylum's contrived claim that its film is "really" about *Homo Floresiensis* – a statement that Asylum apparently never uttered in public until *after* it received Plaintiffs' cease-and-desist letter – ignores Asylum's repeated and extensive efforts to link its film with Plaintiffs' soon-to-be-released movie *The Hobbit* (the "*Hobbit* Film") and with Plaintiffs' previous *Lord of the Rings* films. Tellingly, in advancing this "it's all about archaeology" theory in its Opposition, Asylum is unable to offer any explanation for why it:

- Is releasing its film *Age of the Hobbits* on December 11 – three days before the December 14 release of Plaintiffs' movie *The Hobbit*;

- Has advertised its film using a slender, golden typeface nearly identical to the typeface used for the titles of Plaintiffs' *Lord of the Rings* films and the *Hobbit* Film;

- Has advertised its film on Netflix as a "based on a reimagined version of J.R.R. Tolkien's mythical universe"; or

- Is advertising its film using images that are strongly associated with Plaintiffs' promotion of the *Lord of the Rings* films, but which could have nothing to do with a prehistoric hominid species in Indonesia.

Aside from its post-hoc rationalization about its reasons for using "Hobbit" in the title of its film, Asylum primarily seeks refuge in an argument based on Plaintiffs' supposed delay in seeking relief. This dodge also should be rejected by the Court, as a matter of fact and law. Plaintiffs acted reasonably in seeking to resolve the dispute out of court, and Asylum's vague and equivocal statements in

its Opposition completely fail to establish that a TRO would not provide effective relief. Asylum never says, for example, that any DVDs actually have been shipped to retailers, or that Asylum lacks the ability to halt further duplication and distribution of the DVDs, or that Asylum lacks the power to require its licensees and distributors to wait beyond December 11 to sell DVDs to the public (just as it has apparently required them to wait *until* the December 11 release date to make such sales), or that Asylum lacks the power to recall DVDs already shipped.

Asylum's attempt to rely on the First Amendment balancing test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), also is unavailing. Asylum ***admits*** that *Rogers* has no application to Lanham Act claims – like Plaintiffs' claims here – that based on confusingly similar titles in literary works or films. (Opp. at 10.) That admission alone should end the *Rogers* discussion. Asylum nevertheless tries to raise the defense, based on nothing more than its own *ipse dixit* assertion that the titles in question are not confusingly similar. The facts – including Plaintiffs' survey evidence – show otherwise. Asylum also fails to address Plaintiffs' trademark dilution claims, which do not require a showing of likelihood of confusion and are not subject to a *Rogers* First Amendment defense.

Finally, Asylum's attempts to argue that HOBBIT is "generic" or that its misleading title is protected by a nominative fair use defense find no support in the law and are contradicted by Asylum's own witnesses. For all these reasons, the Court should grant Plaintiffs' TRO Application and immediately prevent any further advertising or distribution of Asylum's *Age of the Hobbits* film.

II. **ASYLUM'S DELAY ARGUMENT CANNOT EXCUSE ITS WILLFUL INFRINGING CONDUCT**

As shown in their TRO Memorandum and supporting declarations, Plaintiffs acted reasonably in putting Asylum on notice of Plaintiffs' claims and trying in good faith to resolve the matter without resort to costly litigation. *See* Memo. at 22 n.14. Delay resulting from such efforts does not weigh against a finding of

irreparable harm.  *See Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 508 (9th Cir. 1991); *Rain Bird Corp. v. Hit Prods. Corp.*, 2004 U.S. Dist. LEXIS 20790, at *19 (C.D. Cal. June 21, 2004); *see also Steinway & Sons v. Demars & Friends*, 1981 U.S. Dist. LEXIS 15169, at *39 (C.D. Cal. Jan. 28, 1981) (reasonable delay caused by efforts "to resolve the dispute without the court's intervention," will not preclude a finding of irreparable harm).[1]  Significantly, Asylum never informed Plaintiffs that it planned to ship any DVDs to distributors on November 19, 2012.  Supplemental Declaration of Andrew J. Thomas, ¶ 2.

Nor is the overall time period from August to November so long as to defeat a showing of irreparable harm.  *See, e.g.*, *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (finding plaintiff brought suit with "reasonable diligence" despite a delay of seven months spent investigating claim); *Cybermedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1078 (N.D. Cal. 1998) ("a reasonable delay caused by plaintiff's good faith efforts to investigate an infringement" will not preclude a finding of irreparable harm).[2]

### A.   Asylum Acted At Its Peril After Being On Notice Of Plaintiffs' Claims.

As a general matter, courts are "loathe to withhold relief solely on [the] ground" of delay.  *Gilder*, 936 F.2d at 423.  That is particularly true where, as here, the defendant has engaged in willful infringing conduct.  *See Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) ("any injury that Defendants may suffer if preliminarily enjoined may be discounted by the fact that Defendants brought the injury upon themselves by intentionally adopting

---

[1] *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536 (9th Cir. 1993), relied on by Asylum (Opp. at 6), is easily distinguished.  There, the court found that an *unexplained* delay of *eight months* between the filing of an unfair labor practices complaint with the NLRB, and the NLRB's motion for a preliminary injunction, implied a lack of irreparable harm.  *Id.* at 539, 544.  Notably, *Miller* relied on *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744 (9th Cir. 1988), which held that *four* months *was* "a reasonable period of time to investigate and deliberate." 853 F.2d at 750.

[2] *See also Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (delay of four months did not rebut presumption of irreparable harm); *Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642, 652 (6th Cir. 1982) (court has wide discretion to excuse a few months' delay in granting injunction motion).

deceptively similar trademarks and packaging"). Here, Asylum has intentionally sought to use the worldwide popularity of the *Hobbit* and *Lord of the Rings* books and movies as a "hook" to draw attention to its film and confuse consumers amid Plaintiffs' massive advertising efforts for the forthcoming *Hobbit* Film.

Asylum should not be allowed to hide behind its shipment of some of the infringing DVDs as an excuse to avoid injunctive relief, because Asylum acted at its own peril well after it had been put on notice of Plaintiffs' claims of trademark infringement. Plaintiffs expressly raised the threat of injunctive relief in their August 31, 2012 cease-and-desist letter (Nelson Decl., ¶ 3, Ex. 1), and the Complaint filed on November 7 expressly requested a preliminary injunction in the prayer for relief. *See TravisMathew, LLC v. Leisure Soc'y Unltd., LLC*, 2012 WL 1463548, at *4 (C.D. Cal. Apr. 26, 2012) (in trademark infringement suit, defendants' possible hardships under an injunction were "mitigated by the fact that Defendants were on notice that a preliminary injunction may be sought," under the terms of a prior employment termination agreement); *see also Team Gordon, Inc. v. Specialized Bicycle Components, Inc.*, 2010 U.S. Dist. LEXIS 130738, at * 13-14 (C.D. Cal. Nov. 18, 2010) (granting preliminary injunction even though the enjoined party faced substantial lost investment, where it "took the risk of an injunction when it continued planning to manufacture products with the [infringing] logo after receiving a cease-and-desist letter").[3]

**B.     Asylum Has Failed To Establish That A TRO Would Not Be Effective.**

While Asylum relies on vague and equivocal language in an attempt to create the impression that the infringing DVDs are out of its control, Asylum fails to show – or even to say – that it has no ability to restrict the further distribution of the DVDs and that a TRO would be ineffective. It asserts in its Opposition that it

---

[3] *See generally Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1334 (7th Cir. 1977) (defendant that deliberately proceeded with marketing and promotion of a product, despite warnings that its mark was infringing, "proceeded at its own risk and cannot now be heard to complain that it will be severely injured if the preliminary injunction is upheld").

4

"delivered" DVDs to "various distributors" and delivered master elements to "various other distributors," who will "do their own duplication" and "will then" deliver the DVDs to retail outlets. Asylum also states that the DVD "will appear" on a video-on-demand service, and it further states that it has only one "direct relationship" with an "end-use" distributor. *See* Opp. at 5; Bales Decl. ¶ 5.

Asylum, however, never says that any DVDs actually have been shipped to retailers, or that Asylum lacks the ability – contractual or otherwise – to halt further duplication and distribution of the DVDs by the "various distributors" with whom it is in privity. Asylum plainly has the ability to require its various distributors to ensure the DVD is not sold to the public *before* December 11 – since that is the release date it has prominently advertised on its website – yet it offers no explanation why it does not also have the ability to require its licensees and distributors to wait *beyond* December 11 to sell DVDs to the public. It also never says it lacks the ability to require its distributors to recall DVDs already shipped.

Finally, Asylum provides no evidence that further duplication and distribution of the DVDs, including retail sales, could not be prevented by a TRO that would be binding upon all parties in privity with and acting in concert with Asylum, where Asylum would be required to give such parties prompt notice of the restraining order. An injunction is binding and enforceable, and thus effective, where it prevents infringement by restraining the activities of downstream distributors as well as the defendant's own activities.[4]

### III. ASYLUM FAILS TO REBUT PLAINTIFFS' SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS

**A.   Asylum Does Not Dispute Plaintiffs' Affirmative Showing**.

Asylum makes no attempt whatsoever to address – let alone try to refute – the extensive evidence submitted by Plaintiffs that establishes their strong rights in

---

[4] *See CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998) (granting preliminary injunction that included order that defendant recall infringing product from all U.S. distributors, where recall was necessary to ensure an "effective remedy").

1  the inherently distinctive HOBBIT Marks and in the title of the forthcoming
2  motion picture *The Hobbit*. *See* Memo. at 3-5, 10-11; Drotos Decl. ¶¶ 6-14; Scott
3  Decl. ¶¶ 5-8. Asylum likewise says nothing to dispute Plaintiffs' showing of a
4  likelihood of confusion – that all of the *Sleekcraft* factors support Plaintiffs and
5  that the Tracking Survey results submitted by Plaintiffs show that a substantial
6  number of regular moviegoers are confused by Asylum's title and DVD artwork
7  into believing that Asylum's *Age of the Hobbits* is associated with Plaintiffs'
8  *Hobbit* Film. *See* Memo. at 2, 13-14; Alemi Decl. ¶¶ 10, 12, 14, 16. Asylum
9  furthermore fails to make any attempt to address Plaintiffs' showing of a likelihood
10 of dilution – that Asylum's DVD will blur and tarnish the HOBBIT Marks,
11 including Plaintiffs' *Hobbit* Film title, by using the mark and title in association
12 with Asylum's competing, inferior product. *See* Memo. at 18-21; Welinsky Decl.
13 ¶¶ 5-7; Saksa Decl. ¶¶ 5-7; Scott Decl. ¶¶ 10-11. Consequently, the Court should
14 find that all of these factors favor issuance of a TRO.

**B.     Asylum's Contrived Defenses Should Be Rejected.**

   **1.     The *Rogers* First Amendment Test Does Not Apply Here.**

Asylum's attempt to rely on the First Amendment balancing test set forth in *Rogers v. Grimaldi*, *supra*, finds no traction. To begin with, Asylum **admits** that *Rogers* has no application to Lanham Act claims – like Plaintiffs' claims here – that are based on confusingly similar titles in literary works or films. (Opp. at 10.) That concession is dispositive of any *Rogers* argument here. Asylum nevertheless tries to raise the defense, based on nothing more than its own self-serving statements that the titles in question are not confusingly similar.[5]

---

[5] Asylum goes so far as to assert that its film *Age of the Hobbits* is not a "mockbuster" at all because the title "is not in any way similar to" the title of the film *The Hobbit*. Opp. at 5. This sweeping statement ignores Asylum's own advertising on Netflix, which explicitly referred to *Age of the Hobbits* as a "mockbuster … based on a reimagined version of J.R.R. Tolkien's mythical universe." Thomas Decl., Ex. 17. Asylum's statement also ignores extensive media coverage of Asylum and its *Age of the Hobbits* film, which describes the film as a mockbuster that makes reference to the Tolkien "Hobbits" made famous in the novel *The Hobbit* and in the *Lord of the Rings* novels and movies. A recent *Grantland* article, for instance, stated that Asylum "is still very much in the

1    The facts show otherwise. In their TRO Memorandum, Plaintiffs demonstrated that each of the eight *Sleekcraft* factors weighs in favor of a determination that there is a likelihood of confusion between Asylum's use of the word "Hobbit" in its *Age of the Hobbits* title and Plaintiffs' *Hobbit* Film title. *See* Memo. at 11-16. Indeed, the Tracking Survey submitted by Plaintiffs showed substantial actual confusion among regular moviegoers on precisely this point. *See* Alemi Decl. at ¶¶ 10-11, Exs. 4, 5.

Moreover, courts frequently have found titles of movies, books, and magazines to be confusingly similar even where, as here, they are not "completely identical" matches (*see* Opp. at 11). In *Rebelution LLC v. Perez*, 732 F. Supp. 2d 883 (N.D. Cal. 2010), for example, the court held that *Rogers* did not apply to a claim that titles of music albums were confusingly similar, where the competing titles in question were "Rebelution" and "Pitbull Starring in Rebelution." *Id.* at 888, 894-95. Likewise, in *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998), the court found a likelihood of confusion between the defendant's book title "Godzilla!" and the plaintiff's film titles *Godzilla, King of the Monsters*; *Godzilla v. Mothra*; and *Son of Godzilla*. *Id.* at 1209, 1212.[6]

Furthermore, Asylum cannot satisfy the second prong of the *Rogers* test in any event – the requirement that the defendant's use of the plaintiff's mark in its title not be explicitly misleading. *See Rogers*, 875 F.2d at 1000. Here, Asylum's use of the title *Age of the Hobbits* – in conjunction with Asylum's other promotional activities deliberately designed to associate its film with Plaintiffs'

---

mockbuster business," noting that "**upcoming projects include *Age of the Hobbits* (a 'companion' to Peter Jackson's *The Hobbit: An Unexpected Journey*)** …." *See* Supp. Thomas Decl., ¶ 5, Ex. 3 (emphasis added); *see also* Thomas Decl., Ex. 16 at 96.

[6] *See also Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 344, 359 (S.D.N.Y. 1998) (film titles *Bridge on the River Kwai* and *Return from the River Kwai* held to be confusingly similar); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 300-01 (S.D.N.Y. 1997) (confusing similarity found between the titles *The Book of Virtues* and *The Children's Audiobook of Virtues*); *Allied Artists Pictures Corp. v. Friedman*, 68 Cal. App. 3d 127, 131, 136 (1977) (upholding a finding likely confusion between the titles *The Story of O* and *The Journey of O*).

*Lord of the Rings* films and *Hobbit* Film – render Asylum's use of the word and mark "Hobbit" explicitly misleading.[7] These activities are detailed in Plaintiffs' TRO Memorandum and include using a typeface that was substantially similar to the typeface used for the *Lord of the Rings* and *Hobbit* movie titles, using artwork filled with images that were evocative of promotional materials used for the *Lord the Rings* films, describing its film in an advertisement as "based on a reimagined version of J.R.R. Tolkien's mythical universe," and purposefully choosing a release date within three days of the heavily-promoted U.S. theatrical release of Plaintiffs' *Hobbit* Film. *See* Memo. at 15-16. As this Court recognized in *Dita, Inc. v. Mendez*, 2010 U.S. Dist. LEXIS 135856 (C.D. Cal. Dec. 14, 2010), evidence that the defendant "actually intended to mislead the public as to the source or content of the work" will "expressly negate the second prong of the *Rogers* test." *Id.* at *10.

Finally, *Rogers* provides no defense to Plaintiffs' claims for trademark dilution, which do not require proof of a likelihood of consumer confusion. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (applying *Rogers* test to infringement claim but not to dilution claim).

### 2. Asylum's "Genericness" And Fair Use Defenses Cannot Protect Its Infringing Conduct.

Asylum's suggestion that the HOBBIT mark has somehow become "generic" (Opp. at 11) is unsupported and absurd. To be generic, a trademark must be widely used to describe a general *type* of product – like cellophane or aspirin – rather than to indicate the source of a product or service. This requires a factual showing that courts uniformly hold is very difficult to make. *Yellow Cab Co. v.*

---

[7] *See Toho Co.*, 33 F. Supp. 2d at 1212, 1214 (marketing activities, including title design, artwork and timing of release, in conjunction with title, can make defendant's use of a mark explicitly misleading); *see also Twin Peaks Prod'ns v. Publications Int'l*, 996 F.2d 1366, 1379-80 (2d Cir. 1993) (remanding for likelihood of confusion analysis where title was "displayed in a manner that conjures up a visual image prominently associated with the work bearing the mark that was copied").

*Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005); *accord Ty, Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir. 2003) ("To determine that a trademark is generic and thus pitch it into the public domain is a fateful step … [that] ordinarily is not taken until the trademark has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling").[8]  Where, as here, the marks are federally registered, there is a strong presumption they are not generic.  *See Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th Cir. 1982).  Plaintiffs' extensive evidence – including a 2007 survey showing that half the respondents associated "Hobbit" with the Tolkien novels or the films and products based on them – makes clear that the fanciful HOBBIT Marks are inherently distinctive and have substantial secondary meaning in the market.  *See* Memo. at 12; Drotos Decl., Ex. 3.

  Asylum's attempted reliance on the nominative fair use doctrine announced in *New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992), is also misplaced.  It is well settled that the doctrine only protects those who use another's trademark for the "purposes of comparison, criticism, [or] point of reference."  *Mattel, Inc. v. Walking Mountain Prod's*, 353 F.3d 792, 809 (9th Cir. 2003); *accord E.S.S. Entm't 2000 v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) ("[s]ince Rockstar did not use the trademarked logo to describe ESS's [business], the district court correctly held that the nominative fair use defense does not apply in this case"); *Diller v. Barry Driller, Inc.*, No. 12-7200, 2012 U.S. Dist. LEXIS 133515, at *10 (C.D. Cal. Sept. 10, 2012) (finding no nominative fair use defense applied since "[d]efendants have not used plaintiff's real name to refer to him directly").  Here, by contrast, Asylum has stated

---

[8] *See generally* J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 12:13 (4th ed. 2011) ("Because a finding of genericness may result in the loss of rights which could be valuable intellectual property, a court should not find genericness without pervasive and clear evidence that the contested term has become generic among a majority of the buyer group.").

9

adamantly that its film does not feature "Tolkien's fantasy characters." *E.g.*, Bales Decl. ¶ 3. Because Asylum has denied that its film refers to or comments on the Tolkien universe portrayed in Plaintiffs' films, the nominative fair use doctrine simply has no application.

More fundamentally, setting aside considerations of legal doctrine, Asylum's claim in its Opposition that its film is "really" about a prehistoric, Indonesian hominid discovered by archaeologists in 2003 is wholly contrived and disingenuous and should not be indulged by the Court.

***First***, Asylum fails to make even a serious attempt to show that the word "Hobbit" is widely used or understood to refer to the Indonesian archaeological find. Each of the two articles submitted by Asylum uses the actual name of the sub-species – *Homo Floresiensis* – far more frequently than it uses the word "Hobbit." As Plaintiffs' showed in their TRO Memorandum, those scientists that have used "Hobbit" as a "nickname" for this hominid species have done so ***in reference to*** the fanciful creatures portrayed in the *Hobbit* and *Lord of the Rings* books and movies. *See* Thomas Decl., ¶ 23, Exs. 20, 21. Asylum's own "evidence" confirms this point. For example, Asylum's counsel refers to an episode of the *Nova* television program that he recalls having seen at some point (Opp. at 4), yet the transcript of that program reveals that the *Nova* documentarians themselves noted that the nickname was based on the previously-existing fictional characters. *See* Supp. Thomas Decl., Ex. 1 at 3 (noting that "it was the name of a fictional character that stuck: the hobbit"); *id.* at 2 ("she seems as mythical as all the other tiny beings found in fairytales and big Hollywood films, creatures like leprechauns, elves and hobbits"); *see also id.*, Ex. 2 (explaining the origins of the "Hobbit" nickname for *Homo Floresiensis*).

***Second***, Asylum is unable to offer any evidence to rebut the results of the Dr. Gerald Ford 2007 survey regarding the fame of the "Hobbit" name and mark. *See* Drotos Decl., ¶ 20, Ex. 3. A review of the actual answers by respondents in

10

that survey to questions about their association of the word "Hobbit" reveals that ***not a single respondent*** out of 400 connected the word "Hobbit" to Indonesia, an archaeological find, or a prehistoric human sub-species. *See id.*

***Third***, it does not appear that Asylum itself ever said that its film related to the Indonesian hominid fossil find until after Plaintiffs sent a cease-and-desist letter in this case. Asylum certainly provides no such evidence. Nor is the dearth of such statements surprising, since Asylum consistently has described its film as a *fantasy*, not as a factual depiction of prehistoric Indonesia. Notably, a recent date-restricted Google search did not find any references connecting *Age of the Hobbits* and *Homo Floresiensis* before September 2012 and, indeed, indicated that Asylum did not begin offering up its pre-hominid *Homo Floresiensis* justification until mid-October 2012, when *The Hollywood Reporter* published a news story about this infringement dispute. *See* Supp. Thomas Decl. ¶ 6, Ex. 4.

***Finally***, in advancing this "archaeology" theory in its Opposition, Asylum is unable to offer any explanation for why it is releasing its film on December 11 – just three days before the U.S. theatrical release of *The Hobbit*; why it has advertised its film using a slender, golden typeface nearly identical to the typeface used for the titles of Plaintiffs' *Lord of the Rings* films and *Hobbit* Film; why it has promoted its film on Netflix as "based on a reimagined version of J.R.R. Tolkien's mythical universe"; or why it has advertised its film using images that are strongly associated with Plaintiffs' promotion of the *Lord of the Rings* films. *See* Memo. at 6-7, 13. This deliberate conduct – manifestly designed to create consumer confusion and free-ride on the publicity surrounding the *Hobbit* Film – makes clear that Asylum's post-hoc "archaeology" rationale cannot be taken seriously.

### IV. ASYLUM FAILS TO REBUT PLAINTIFFS' SHOWING ON IRREPARABLE HARM, BALANCE OF HARDSHIPS AND PUBLIC INTEREST

Aside from its misguided and unsupported arguments about delay, Asylum also has nothing at all to say in response to Plaintiffs' declarations – submitted by

11

Reply Memorandum ISO Plaintiffs' Application for TRO

experienced executives in the field of motion picture distribution – attesting to the irreparable harm Plaintiffs will suffer in the absence of interim injunctive relief. *See* Memo. at 22-24; Welinsky Decl. at ¶¶ 5-7; Scott Decl. at ¶ 11; Saksa Decl. at ¶¶ 5-6. Similarly, Asylum makes no effort whatsoever to rebut the Plaintiffs' showing that the balance of hardships weighs in their favor, and that the public interest supports issuance of injunctive relief here. *See* Memo. at 24-25.

Because Asylum has failed even to address these arguments, the Court should find in favor of Plaintiffs on each of these points. *See*, *e.g.*, *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1177 (N.D. Cal. 2009) (where balance of hardships and public interest were "ignored in Defendants' opposition," the court considered the relevant case law on hardship/public interest and, "[g]iven these considerations, and Defendants' lack of response thereto," found those factors favored the plaintiffs); *Concrete Washout Sys., Inc. v. Washout Sys., LLC*, 2008 WL 5411965, at *2, *3 (E.D. Cal. Dec. 24, 2008) (finding in favor of plaintiffs on likelihood of success on the merits and balance of hardships where defendant failed to include any argument in its opposition and thereby waived the points).

## V. CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant their Application and enter a Temporary Restraining Order, binding upon Asylum and its licensees and distributors in privity with it, that requires the enjoined parties to ensure that Asylum's DVD *Age of the Hobbits* is not sold, offered for sale or advertised using any title that contains the word "Hobbit" or that otherwise infringes Plaintiffs' rights.

Dated: November 28, 2012          JENNER & BLOCK LLP

/s/ Andrew J. Thomas
Andrew J. Thomas

Attorneys for Plaintiffs