JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Lisa J. Kohn (SBN 260236)
lkohn@jenner.com
Daniel D. Welsh (SBN 288904)
dwelsh@jenner.com
Julia B. Cherlow (SBN 290538)
jcherlow@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:   (213) 239-5199

Attorneys for Plaintiffs
WARNER BROS. ENTERTAINMENT INC., NEW LINE CINEMA LLC, NEW LINE PRODUCTIONS, INC., METRO-GOLDWYN-MAYER STUDIOS INC., and THE SAUL ZAENTZ COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; NEW LINE CINEMA LLC, a Delaware limited liability company; NEW LINE PRODUCTIONS, INC., a California corporation; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; and THE SAUL ZAENTZ COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br>v.<br><br>THE GLOBAL ASYLUM INC. (aka The Asylum), a California corporation,<br><br>Defendant. | Case No. 2:12-cv-09547-PSG-CW<br><br>**STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION** |

This Stipulation for Entry of Judgment of Permanent Injunction is entered into and effective as of January 31, 2014, by and between plaintiffs Warner Bros. Entertainment Inc., New Line Cinema LLC, New Line Productions, Inc. (together with New Line Cinema LLC, "New Line"), Metro-Goldwyn-Mayer Studios Inc., and The Saul Zaentz Company (collectively, "Plaintiffs"), and defendant The Global Asylum Inc. ("Asylum"), through their respective undersigned counsel of record in this action, with reference to the following facts:

1.  Subject to various agreements among them, Plaintiffs own exclusive rights to produce and distribute motion pictures based on the classic literary works of Professor J.R.R. Tolkien entitled *The Lord of the Rings, The Two Towers,* and *The Return of the King* (known as the "*Lord of the Rings* trilogy"), and *The Hobbit*, fantasy stories that follow the adventures of fictional creatures called "hobbits."

2.  New Line created, released and distributed three motion pictures based on the *Lord of the Rings* trilogy in 2001, 2002, and 2003, respectively (the "*Lord of the Rings* Films").

3.  Plaintiffs have developed, produced, and distributed in the United States and in other territories worldwide the motion picture *The Hobbit: An Unexpected Journey*, which is the first of three films to be released by Plaintiffs based on the novel *The Hobbit* by J.R.R. Tolkien (the "*Hobbit* Films"). The other two Hobbit Films are entitled *The Hobbit: The Desolation of Smaug* (released theatrically in December 2013) and *The Hobbit: There and Back Again* (scheduled for theatrical release in December 2014).

4.  Defendant The Global Asylum, Inc. has represented that it has acted as exclusive sales agent for a motion picture starring Christopher Judge and Bai Ling entitled *Age of the Hobbits*, which was developed, produced, and distributed by The Institution LLC (the "Asylum Motion Picture"). The Asylum Motion Picture was scheduled for release on December 11, 2012, was distributed to retailers under that title, and also has been distributed under the titles *Lord of the*

1 *Elves* and *Clash of the Empires*.

2  5. On November 7, 2012, Plaintiffs filed this Action alleging, among other things, that they own exclusive trademark rights in the terms "Hobbit" and "Hobbits" (the "Hobbit Marks") and in the titles of the *Hobbit* Films, and that Asylum's sale, marketing, packaging, and promotion of the Asylum Motion Picture constitute trademark infringement, false designation of origin, unfair competition, and false advertising under the federal Lanham Act, and unfair competition and false advertising under California law.

 6. On November 28, 2012, Asylum filed a counterclaim against Plaintiffs in the Action for a declaration of trademark non-infringement, and on December 3, 2012, Asylum filed an answer to Plaintiffs' complaint in the Action. Plaintiffs filed an answer to Asylum's counterclaim on December 18, 2012.

 7. On December 10, 2012, the Court entered an order that temporarily restrained the advertising, sale, and distribution by Asylum of any motion picture under the title *Age of the Hobbits* or any other title confusingly similar to the Hobbit Marks, pending a hearing on an order to show cause why a preliminary injunction should not issue. On January 29, 2013, the district court issued a preliminary injunction prohibiting Asylum's use of the Hobbit Marks in conjunction with the Asylum Motion Picture. The Ninth Circuit affirmed the grant of a preliminary injunction on October 20, 2013.

 8. Plaintiffs and Asylum have reached a confidential settlement of this Action and, as part of that settlement, have agreed to the entry by the Court of a Judgment for Permanent Injunction in this action on the terms set forth below.

NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE, subject to the approval of the Court, that the Court shall enter judgment in this action granting a permanent injunction (the "Permanent Injunction Judgment") providing as follows:

A. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Asylum, its respective parent, subsidiary and affiliated companies, together with its respective officers, directors, principals, owners, partners, managers, shareholders, agents, attorneys, employees, representatives, successors, assigns, transferees, and all persons acting in concert or participation with them, or at their direction, or within their control, shall be permanently enjoined and restrained from engaging in any of the following:

1. Manufacturing, producing, labeling, selling, distributing, licensing, sub-licensing, assigning, marketing, promoting, or advertising the Asylum Motion Picture in any manner that:

   a. uses the titles *Age of the Hobbits*, *Lord of the Elves*, or any other title that includes the words "Hobbit," "Hobbits," "Tolkien" or any variation of those words or the titles of any of the *Lord of the Rings* Films or *Hobbit* Films (or any similar variations thereof), or the proper name of any of the characters, places, items, or events in the *Lord of the Rings* novels or films or in the *Hobbit* novel or *Hobbit* Films (in each case, whether or not capitalized); or

   b. uses in or on any front or back DVD cover, front or back Blu-ray cover, or other packaging the words "Hobbit, "Hobbits," "Tolkien" or any variation of those words or the titles of any of the *Lord of the Rings* Films or *Hobbit* Films (or any similar variations thereof), or the proper name of any of the characters, places, items, or events in the *Lord of the Rings* novels or films or in the *Hobbit* novel or *Hobbit* Films (in each case, whether or not capitalized).

2. Manufacturing, producing, labeling, selling, distributing, licensing, sub-licensing, assigning, marketing, promoting, or advertising any other motion picture that:

   a. uses the titles *Age of the Hobbits*, *Lord of the Elves*, or any other title that includes the words "Hobbit," "Hobbits," "Tolkien" or any variation of those words or the titles of any of the *Lord of the Rings* Films or

*Hobbit* Films (or any similar variations thereof), or the proper name of any of the characters, places, items, or events in the *Lord of the Rings* novels or films or in the *Hobbit* novel or *Hobbit* Films (in each case, whether or not capitalized); or

    b. uses in or on any front or back DVD cover, front or back Blu-ray cover, or other packaging the words "Hobbit, "Hobbits," "Tolkien" or any variation of those words or the titles of any of the *Lord of the Rings* Films or *Hobbit* Films (or any similar variations thereof), or the proper name of any of the characters, places, items, or events in the *Lord of the Rings* novels or films or in the *Hobbit* novel or *Hobbit* Films (in each case, whether or not capitalized).

  3. Distributing, advertising, marketing, promoting, selling, renting, licensing, sublicensing, assigning, or participating in any other exploitation of the Asylum Motion Picture using the titles *Age of the Hobbits* or *Lord of the Elves* (or any similar variations thereof) in connection with any television broadcast, streaming, Internet download, or video-on-demand services.

 B. Asylum shall make good faith requests in writing to all of its domestic distributors, wholesalers, brokers, licensees, sublicensees, assignees, and retailers that it knows or has reason to believe received the Asylum Motion Picture under the title *Age of the Hobbits* or *Lord of the Elves* (or any similar variations thereof) (1) to cease all distribution, sale, rental, licensing, sublicensing, assigning, advertising, marketing, promotion, or other exploitation of the Asylum Motion Picture under the titles *Age of the Hobbits* or *Lord of the Elves* (or any similar variations thereof), including in connection with any DVD or Blu-ray discs and/or any television broadcast, streaming, Internet download, or video-on-demand services, (2) to remove all copies of the Asylum Motion Picture that use the titles *Age of the Hobbits* or *Lord of the Elves* (or any similar variations thereof) from any method or manner of distribution and return such copies to Asylum, which shall then deliver them to Plaintiffs for destruction, and (3) to request in writing that their respective sublicensees, assignees, retailers, and other downstream recipients

of the Asylum Motion Picture comply with the requirements of parts (1) and (2) of this Section B.

C. Asylum shall provide written notice of this Permanent Injunction Judgment (1) to each of its respective officers, directors, principals, owners, partners, shareholders, agents, attorneys, representatives, successors, assigns, affiliated entities, and all entities under their control, and (2) to all distributors, brokers, wholesalers, licensees, sublicensees, assignees, retailers, and all other persons or entities in privity with Asylum that it knows or has reason to believe received the Asylum Motion Picture under the title *Age of the Hobbits* or *Lord of the Elves* (or any similar variations thereof), as well as to all domestic retailers and other distributors that Plaintiffs request in writing that Asylum so notify.  Asylum shall provide a copy of the Permanent Injunction Judgment as part of any such notice, which may be transmitted by email.

D. Within thirty (30) days of the date the Court enters the Permanent Injunction Judgment, Asylum shall serve Plaintiffs with a report in writing and under oath setting forth the manner in which it has complied with Sections B and C the Permanent Injunction Judgment, by providing (1) a copy of any notice or communication sent to anyone by Asylum regarding the Permanent Injunction Judgment, and (2) a list of all persons and entities to whom such notice or communication was sent.

E. All claims, counterclaims, and defenses in this action shall be resolved by the Permanent Injunction Judgment.  Plaintiffs and Asylum shall each bear their own attorneys' fees and costs of suit in the Action.

F. Plaintiffs and Asylum consent to, and the Court shall maintain, continuing jurisdiction for purposes of enforcement of the Permanent Injunction Judgment.  Violation of the Permanent Injunction Judgment shall expose Asylum and all other persons bound by the Judgment to all applicable penalties, including contempt of Court.

5
STIPULATION FOR ENTRY OF PERMANENT INJUNCTION

G. Plaintiffs and Asylum irrevocably and fully waive and relinquish any argument that venue or jurisdiction by this Court is improper or inconvenient. Plaintiffs and Asylum irrevocably and fully waive any and all right to appeal the Permanent Injunction Judgment, to have it vacated or set aside, or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

H. The undersigned counsel represent that they have been authorized to execute this Stipulation For Entry of Permanent Injunction on behalf of their respective clients as set forth below.

Date: February 4, 2014         LAW OFFICES OF SCOTT A. MEEHAN

By  *s/Scott A. Meehan*
       Scott A. Meehan

Attorney for The Global Asylum Inc.

Date: February 4, 2014         JENNER & BLOCK LLP

By  *s/Andrew J. Thomas*
       Andrew J. Thomas

Attorneys for Plaintiffs Warner Bros. Entertainment Inc., New Line Cinema LLC, New Line Productions, Inc., Metro-Goldwyn-Mayer Studios Inc., and The Saul Zaentz Company